UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SHANI BURNETT,                           §
                                         §
          *Appellant*,                   §
                                         §
v.                                       §          CIVIL ACTION H-08-3193
                                         §          ADVERSARY ACTION H-08-3239
STEWART TITLE, INC.,                     §
                                         §
          *Appellee*.                    §

MEMORANDUM OPINION & ORDER

Pending before the court is appellant's appeal of a final judgment by a bankruptcy court

pursuant to 28 U.S.C. § 158(a)(1). Dkt. 1.   After considering the parties' arguments and the

applicable law, the bankruptcy court's 12(b)(6) dismissal of appellant's claims is AFFIRMED.

BACKGROUND

A.       Statement of Facts

The appellant, Shani Burnett, filed a voluntary petition under Chapter 13 of the Bankruptcy

Code, 11 U.S.C. §§ 1301–30 (2006), on September 1, 2006.  Dkt. 6 at 97. The appellee, Stewart

Title, interviewed Burnett for prospective employment twice, July 3 and 11, 2007.  Dkt 6 at 97.  Two

days following the second interview, Burnett completed the mandatory forms for pre-employment,

a drug screening and background check.  Dkt. 6 at 97.  Beverly Harmsen, a Stewart Title human

resources employee, conveyed an offer of employment to Burnett contingent upon the favorable

results of the drug screening and background check.  Dkt. 6 at 97.  During the background check,

Stewart Title discovered Burnett's bankruptcy status and rescinded its offer before Burnett began her

employment.  Dkt. 6 at 97-98.

**B.      Procedural History**

On July 3, 2008, Burnett filed an adversary suit against Stewart Title, as well as an unknown person or organization who recommended against hiring her.  Dkt. 6 at 11–12.  Burnett asserted that Stewart Title unlawfully discriminated against her due solely to her bankruptcy status and sought damages, declaratory, and other relief.  Dkt. 6 at 16-18.  On August 8, 2008, Stewart Title filed a motion to dismiss under Rule 12(b)(6).  Dkt. 6 at 47–54.  Stewart Title later filed an amended answer.  Dkt. 6 at 64-70 .  The bankruptcy court held hearings on September 10 and 26, 2008 and took the matter under advisement.  Dkt. 6-1 at 23–40, 42–47.

On October 14, 2008, the bankruptcy court issued a memorandum opinion on Stewart Title's motion to dismiss under Rule 12(b)(6).  Dkt. 6 at 96–102.  The bankruptcy  court found that 11 U.S.C. § 525(b)'s omission of the phrase "deny[ing] employment to" precluded any assertion of discrimination due to bankruptcy status by prospective employees before private employers formally make offers of employment.  Dkt. 6 at 100.  Because § 525(b) did not cover Burnett's claim of discrimination on the basis of bankruptcy status, the bankruptcy court entered an order granting Stewart Title's motion to dismiss Burnett's complaint and denying all requested relief.  Dct. 6 at 104–05.

**C.      Legal Standards**

This court has jurisdiction of the appeal under 28 U.S.C. § 158(a)(1), and in reviewing the findings of a bankruptcy court, a district court acts in an appellate capacity.  *See Perry v. Dearing*, 345 F.3d 303, 308–09 (5th Cir. 2003).  The burden is on the appellant to show that a finding of fact made by a bankruptcy court is clearly in error.  *See Perry*, 345 F.3d at 309; *Butler Aviation Int'l, Inc.*

2

*v. Whyte*, 6 F.3d 1119, 1127–28 (5th Cir. 1993); *see also* FED. R. BANKR. P. 8013 ("Findings of fact . . . shall not be set aside unless clearly erroneous . . ."). A finding of fact is clearly erroneous when, even in the presence of evidence to support it, the reviewing court is left with a "definite and firm conviction" that the bankruptcy court has made an error. *See Carol v. Quinlivan*, 434 F.3d 314, 318 (5th Cir. 2005). A bankruptcy court's conclusions of law are reviewed *de novo*. *See Perry*, 345 F.3d at 309; *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 928 (5th Cir. 1999).

## ANALYSIS

Burnett asserts that the bankruptcy court improperly construed 11 U.S.C. § 525(b) when it found that the statute permits discrimination by private employers against prospective employees on the basis of bankruptcy status. There are two primary issues. First, Burnett argues that the bankruptcy court incorrectly applied the *expressio unis est exclusio alteris*[1] canon of statutory construction ("exclusionary rule") in evaluating 11 U.S.C. § 525(b). Second, Burnett states that the plain meaning of the statute prohibits this type of discrimination, and that the bankruptcy court's decision results in an incoherent and inconsistent statutory scheme.

### 1.    The Exclusionary Rule

#### A.    Standard of Review

When initially construing a statute, the starting point should be the language itself, "for if the intent of Congress is clear, that is the end of the matter." *Arif v. Mukasey*, 509 F.3d 677, 681 (5th Cir. 2007) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409-10, 113 S.Ct. 2151, 2157 (1993)) (internal quotations omitted). Courts have articulated the exclusionary rule as "[w]here

---

[1] Burnett refers to this rule of statutory construction as the "*Russello* rule," after the Supreme Court's seminal decision in *Russello v. United States*, 464 U.S. 16, 104 S.Ct. 296 (1983). For the purposes of this Memorandum Opinion, it will be referred to as the "exclusionary rule."

Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.* (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296 (1983)) (internal quotations omitted).  However, the exclusionary rule is not absolute, and can be overcome by contravening legislative intent.  *U.S. Dep't of Justice v. Fed. Labor Relations Auth.*, 727 F.2d 481, 491 (5th Cir. 1984) ("The rule of exclusion . . . is only an aid to statutory construction, not a rule of law.").

### B.    Analysis

The bankruptcy court compared 11 U.S.C. § 525(a)[2], prohibiting discrimination by a governmental unit, with 11 U.S.C. § 525(b)[3], prohibiting discrimination by private employers.  The bankruptcy court found that, unlike in § 525(a), in § 525(b) Congress intentionally left out the phrase

---

[2] Subsection (a) of § 525 provides that:

A governmental unit may not . . . *deny employment to*, terminate employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act . . . solely because such a bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(a) (2006) (emphasis added).

[3] Subsection (b) of § 525 states:

No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt
    (1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;
    (2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or
    (3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(b) (2006).

4

"deny employment to" when listing prohibitions on private employers. Therefore, the bankruptcy court held that, according to the exclusionary rule, § 525(b) did not prohibit private employers from refusing to hire persons with a bankruptcy on their record.

Burnett argues that Congress did not consider 11 U.S.C. §§ 525(a) and (b) simultaneously, and that this temporal disparity makes the exclusionary rule inapplicable. Relying on the Supreme Court's decision in *Gomez-Perez v. Potter*, Burnett asserts that, because Congress enacted 11 U.S.C.§ 525(b) six years after 11 U.S.C. § 525(a), this passage in time creates "[n]egative implications raised by the disparate provisions," and weakens any exclusionary inference from seemingly deliberate omissions. *Gomez-Perez v. Potter*, 128 S.Ct. 1931, 1940 (quoting *Lindh v. Murphy*, 521 U.S. 320, 330, 117 S.Ct. 2059 (1997)). In *Gomez-Perez*, the primary issue was whether the federal-sector provision of the Age Discrimination in Employment Act (ADEA) included retaliation based upon filing of an age discrimination complaint. *Gomez-Perez*, 128 S.Ct. at 1936. The respondent argued that the existence of a provision prohibiting retaliation against individuals who complain of age discrimination in the private-sector, coupled with the absence of a similar provision relating to federal employment, demonstrated that Congress acted "intentionally and purposefully" in the latter omission. *Id.* at 1939-40. The Supreme Court held that the statutory phrase "discrimination based on age" did cover such retaliation under the federal-sector provision, observing that prior decisions interpreting similar language in racial and sex discrimination statutes included "retaliation"for discrimination claims under "discrimination." *Id.* at 1936-37 (citing *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 905 S.Ct. 400 (1969), *Jackson v. Birmingham Bd. Of Ed.*, 544 U.S. 167, 125 S.C.t 1497 (2005)). The Supreme Court further determined that the exclusionary rule did not apply, in part because Congress considered the federal and private-sector

provisions of the ADEA seven years apart, and due to the provisions' differing language.  *Id.* at 1940-41.  Burnett asserts that the Supreme Court's unwillingness to use the exclusionary rule in *Gomez-Perez* should control here.

Burnett's reading ignores the Supreme Court's observation that the statutes at issue in *Gomez-Perez* were not enacted with reference to one another and differed greatly in their language. *Id.* at 1940 ("The ADEA federal-sector provision, however, was not modeled after [the private-sector provision] and is couched in very different terms").  Here, unlike the sections in *Gomez-Perez*, §§ 525(a) and (b) have many significant factors in common.  First, with the exception of one phrase, the language regarding employment discrimination in both sections is identical.  Further, §§ 525(a) and (b) share the same subject matter, employment discrimination based on bankruptcy status.  And, although not enacted simultaneously, Congress chose to make the two passages adjacent subsections of the same statutory provision. *See In re Stinson*, 285 B.R. 239, 249 (W.D. Va. 2002) ("[T]he phrases here are used in the same context (prohibited discriminatory conduct) and in the same section . . .").  Therefore, the lack of temporal proximity does not lessen the import of the omission of "deny[ing] employment to" in § 525(b) .

Burnett next asserts that the exclusionary rule's application is inappropriate because §§ 525(a) and (b) address different types of employers, government and private, and are therefore not a part of an associated group.  Even ignoring the fact that these subsections were included under the same statutory provision, specifically addressing protection against discriminatory treatment, the similar language regarding employment discrimination clearly indicates association.  While Burnett contends that it would be "nonsensical" to read §§ 525(a) and (b) together, the opposite is true.  To separate §§ 525(a) and (b) and treat them as disparate solely because they address different types of

employers would irrationally ignore that Congress purposefully placed them adjacent to each other as subdivisions of the same section.  Burnett's argument is therefore unpersuasive.

Burnett also contends that §§ 525(a) and (b) represent different formulations of statutory language.  Relying on *City of Columbus v. Ours Garage and Wrecker Service, Inc.*, Burnett argues that differing language in the respective subsections weakens the rule of exclusion.  536 U.S. 424, 425, 122 S.Ct. 2226, 2228 (2002) (holding that federal preemption legislation relating to motor carriers under 49 U.S.C. § 14501(c)(1) did not supplant local regulation).  While it is true that the passages are not identical, the differing language addresses details concerning the types of employer, government or private-sector.  11 U.S.C. §§ 525(a)–(b) (2006).  Where the language addresses the statute's primary purpose, protection against discriminatory treatment, the language remains nearly identical, except for § 525(b)'s omission of "deny[ing] employment to" prospective employees in the private sector.  *Id.*  Because Congress used similar language in addressing the statute's primary purpose, the difference between the two sections does not vitiate application of the exclusionary rule.

Burnett's assertion that the differing physical structure of the sections further weakens the rule of exclusion is likewise unavailing.  Burnett provides no case law, and this court has been unable to find any, where a presumption against the exclusionary rule arises due to dissimilar physical layout of associated subsections.  Again, the language concerning protection against employment discrimination remains identical, except  for the omission of "deny[ing] employment to" with respect to private employers.  This is a purposeful omission, and exclusionary rule applies.

2.      **Plain Language of the Statute**

    A.      **Standard of Review**

When interpreting a statute, courts should give words their ordinary construction and provide the statute's intended meaning. *White v. Black* 190 F.3d 366, 368-69 (5th Cir. 1999). Courts must follow the plain language unless the results are overtly contrary to legislative intent. *Johnson v. Sawyer*, 120 F.3d 1307, 1319 (5th Cir. 1997) (quoting *Demarest v. Manspeaker*, 498 U.S. 184, 190, 111 S.Ct. 599, 603 (1991)) ("[The court] follow[s] the plain meaning of a statute unless it would lead to a result so bizarre that Congress could not have intended it") (internal quotations omitted). When the plain language leads to results that directly contradict the clear intent of the statute, the statute may then be interpreted contrary to its clear and unambiguous wording. *Abdalla v. C.I.R.*, 647 F.2d 487, 496 (5th Cir. 1981). However, interpretation contrary to the ordinary wording of a statute is permissible only under "rare and exceptional circumstances." *See id.* at 497 (quoting *Crooks v. Harrelson*, 282 U.S. 55, 59-60, 51 S.Ct. 49, 50 (1930)) ("[T]he absurdity must be so gross as to shock the general moral or common sense").

    B.      **Analysis**

In dismissing Burnett's claim, the bankruptcy court found that Stewart Title conditioned an offer of employment upon receipt of a satisfactory background check, and that Stewart Title withdrew this conditional offer upon discovery of Burnett's bankruptcy status. Dkt. 6 at 97-98. The bankruptcy court decided that, had Congress wished to prohibit discrimination against prospective employees in the private-sector due to bankruptcy status, it would not have omitted the language "deny employment to" included in the § 525(a) government provision, from § 525(b). *Id.* at 100-02. Further, the bankruptcy court held that based on Congress's careful drafting of § 525(b), the phrase

"discriminate with respect to employment" was not a catchall phrase intended to apply to all aspects of employment. *Id.* at 100.

Burnett asserts that the bankruptcy court ignored the "plain meaning rule" in interpreting the phrase "with respect to employment" in § 525(b), and that this language should cover prospective employees in the private-sector. Burnett relies solely upon one case, *Leary v. Warnaco*, 251 B.R. 656 (S.D.N.Y. 2000), and readily admits that the overwhelming majority of courts have found otherwise. *See e.g. In re Madison Madison Int'l of Ill.,* 77 B.R. 678 (E.D. Wis. 1987); *Pastore v. Medford Savs. Bank*, 186 B.R. 553 (D. Mass. 1995); *Fioriani v. CACI,* 192 B.R. 401 (E.D. Va. 1996); In *re Hardy*, 209 B.R. 371 (E.D. Va. 1997). The *Leary* court held that § 525(b)'s prohibition on private employers from discriminating "with respect to employment" also covered discrimination against prospective employees in the private-sector. *Leary*, 251 B.R. at 658. Further, the *Leary* court stated that no difference existed between government and private employers, and that the "fresh start" policy of the Bankruptcy Code was inhibited by either type of discrimination. *Id.* Addressing the contention that § 525(b) prevented claims of discrimination against private employers by prospective employees, the *Leary* court observed that, "[a] Court should not go out of its way to place such an absurd gloss on a remedial statute."

While the *Leary* court's desire to uphold the "fresh start" policy is commendable, the plain language of the statute does not support its interpretation. *See In re Stinson*, 285 B.R. 239, 247 (W.D. Va. 2002) ("[T]he fact that the result reached . . . more fully advances the apparent goals of § 525 does not necessarily mean that the court should interpret the statute to reach that goal."). The *Leary* court, in isolating the phrase "with respect to employment," failed to look to the statute as a whole in evaluating its construction. *See id.* at 247-48 (quoting *Kokoszka v. Belford*, 417 U.S. 642,

650, 94 S.Ct. 2431, 2436 (1974)).  The *Leary* court's interpretation would include "by its plain meaning *all* aspects of employment including hiring, firing and material changes to job condition" in the phrase "with respect to employment."  *Leary*, 251 B.R. at 659.  Were that the case, § 525(a)'s use of "deny[ing] employment to" and "terminat[ing] the employment of," along with § 525(b)'s use of "terminat[ing] the employment of," would be rendered superfluous and repetitive.  11 U.S.C. §§ 525(a)–(b) (2006).  "[T]he court must heed the cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant."  *Stinson*, 285 B.R. at 248 (quoting *Kungys v. United States*, 485 U.S. 759, 778, 108 S.Ct. 1537, 1550 (1988)).

Though the *Leary* court posits that an omission of discrimination against prospective employees results in an "absurd gloss," to construe the statute otherwise creates untenable redundancy.  Moreover, by "harm[ing] the text enacted by Congress," the court impermissibly usurps the legislative role of Congress.  *See Stinson*, 285 B.R. at 250.  Burnett argues that this results in an "incoherent and inconsistent statutory scheme" with undesirable results.  But, as with the *Leary* court's decision, Burnett's interpretation of the statute runs counter to the unambiguous language and the purposeful omission of "deny[ing] employment to" in § 525(b).  Even in light of the Bankruptcy Code's "fresh start" policy, where the statutory language is clear, the court's role in interpreting that language is limited.  *See Fiorani*, 192 B.R. at 406 ("It would be wholly inappropriate for a court to disregard a statute's plain language . . . and embark instead on a wide-ranging attempt to expand the statute  beyond its explicit terms merely to give effect to an abstract statement of purpose").

**CONCLUSION**

Based upon a review of the applicable law, the bankruptcy court did not err in holding that 11 U.S.C. § 525(b) does not prohibit private employers from discriminating against prospective employees based on their bankruptcy status.  Accordingly, the bankruptcy court's 12(b)(6) dismissal of Burnett's claims is AFFIRMED.

It is so ORDERED.

Signed at Houston, Texas on March 29, 2010.

_____
Gray H. Miller
United States District Judge

11